UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SPOTLIGHT TICKET MANAGEMENT
INC., *et al.*,

       Plaintiffs,

    -v-

JAMES DAIGLE,

       Defendant.

23-CV-10035 (JPO)

OPINION AND ORDER

J. PAUL OETKEN, District Judge:

In this case, brought by a software company against a former employee for breach of

several restrictive covenants and related claims, Defendant James Daigle now asserts a single

counterclaim for breach of a release agreement against Plaintiffs Spotlight Ticket Management

Inc. and SSSI Acquisition, LLC (collectively, "Spotlight").  Before the Court is Spotlight's

motion to dismiss the counterclaim.  For the reasons that follow, that motion is granted.

**I.  Background**

The Court assumes familiarity with the factual and procedural background of this case,

which arises between a software company and its former employee.  *See Spotlight Ticket Mgmt.,*

*Inc. v. Daigle*, No. 23-CV-10035, 2024 WL 3966900, at *1-2 (S.D.N.Y. Aug. 28, 2024)

("*Spotlight I*").  In its complaint, Spotlight asserted claims against Daigle for breach of contract,

breach of the implied covenant of good faith and fair dealing, and tortious interference with

prospective business relations.  (ECF No. 10 ¶¶ 82-128.)  Daigle moved to dismiss all counts.

(ECF No. 15.)  The Court granted that motion in part—dismissing the implied covenant and

tortious interference claims—but denied it with respect to the breach of contract claim, holding

that Spotlight plausibly alleged at least that Daigle competed with Spotlight in violation of the

Asset Purchase, Inventions, and Separation Agreements.  *Spotlight I*, 2024 WL 3966900, at *6-

13. In particular, the Court rejected Daigle's argument, made in support of his motion to dismiss, that Spotlight could not enforce the Separation Agreement because it breached the agreement by including pre-release allegations in the complaint. *Id.* at *5. The Court reasoned that Daigle's assertion of a breach by Spotlight could not excuse his own performance obligations because (1) a subsequent breach does not excuse prior nonperformance under New York law; and (2) accepting Spotlight's factual allegations as true, any such breach would not be—as a matter of law sufficient to grant a Rule 12(b)(6) motion—"material" to excuse performance by the other contracting party. *Id.* The Court noted, also, that at most, Daigle's argument that Spotlight breached the Separation Agreement would preclude enforcement of that agreement, but not the Asset Purchase and Inventions Agreements. *See id.*

After the Court's ruling on the motion to dismiss, Daigle asserted in his amended answer a counterclaim against Spotlight for breach of the Separation Agreement, alleging that Spotlight violated that agreement's release of claims arising before March 4, 2023. (*See* ECF No. 33 ¶¶ 130-70.) In his counterclaim, Daigle contends that "the three claims for a breach of the implied covenant of good faith and fair dealing and the claim for tortious interference with prospective business relations . . . [are] based upon and/or related to allegations of wrongdoing occurring before the Effective Date of the Separation Agreement, for which the claims were released and a covenant not to sue promised." (*Id.* ¶¶ 160-61.) On November 12, 2024, Spotlight moved to dismiss the counterclaim and filed a memorandum of law in support. (ECF Nos. 36, 38 ("Mem.").) On November 26, 2024, Daigle opposed the motion. (ECF No. 40 ("Opp.").) On December 3, 2024, Spotlight replied in further support of the motion. (ECF No. 41 ("Reply").)

**II.    Legal Standard**

Faced with a Rule 12(b)(6) motion, "a new counterclaim, like all pleadings, must conform to the pleading requirements of *Twombly* and *Iqbal*." *GEOMC Co., Ltd. v. Calmare Therapeutics Inc.*, 913 F.3d 92, 99 (2d Cir. 2019). That means it must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A counterclaim need not contain "detailed factual allegations," but it must offer something "more than an unadorned, the[-counterclaim]-defendant-unlawfully-harmed-me accusation." *Cf. Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up). A counterclaimant must plead "factual content that allows the court to draw the reasonable inference" that the counterclaim defendant "is liable for the misconduct alleged." *Cf. id.* (citing *Twombly*, 550 U.S. at 556). In resolving a motion to dismiss, the Court must accept as true all well-pleaded factual allegations in the counterclaim, "drawing all reasonable inferences" in favor of the counterclaimant. *Cf. Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012).

## III. Discussion

Before the Court may assess the legal sufficiency of Daigle's breach of contract claim, it must determine the proper law to apply. The Separation Agreement, upon which Daigle asserts his counterclaim, contains a choice-of-law provision selecting New York law to govern disputes arising out of the contract. *See Spotlight I*, 2024 WL 3966900, at *3 ("[T]he parties agree that the . . . Inventions and Separation Agreements contain clauses selecting New York law."); *see also Pilon v. Discovery Commc'ns, LLC*, --- F. Supp. 3d ---, ---, No. 24-CV-4760, 2025 WL 752244, at *10 (S.D.N.Y. Mar. 10, 2025) ("New York courts now refuse to consider the public policy of [other] states . . . to overturn an otherwise valid contractual choice of law provision." (cleaned up)). The parties also both rely on New York law in briefing the motion. (*See e.g.*, Mem. at 23; Opp. at 12.) *See also Quinio v. Aala*, No. 19-CV-4686, 2022 WL 21125, at *8 (E.D.N.Y. Jan. 3, 2022) ("New York choice-of-law principle[s] suggest[] that, where the parties'

briefing assumes that New York's substantive law applies, that is sufficient to establish choice of law, and the Court need not conduct its own choice-of-law analysis." (citing *Krumme v. WestPoint Stevens Inc.*, 238 F.3d 133, 138 (2d Cir. 2000))).  Accordingly, New York law governs Daigle's counterclaim arising out of the Separation Agreement.

"To state a claim in federal court for breach of contract under New York law, a complaint need only allege (1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages." *Harsco Corp. v. Segui*, 91 F.3d 337, 348 (2d Cir. 1996) (citing *Tagare v. Nynex Network Sys. Co.*, 921 F. Supp. 1146, 1149 (S.D.N.Y. 1996)); *see also Edwards v. Sequoia Fund, Inc.*, 938 F.3d 8, 12 (2d Cir. 2019) (enumerating essentially the same requirements).  The Court must interpret a complete and unambiguous contract "according to the plain meaning of its terms." *Law Debenture Tr. Co. of N.Y. v. Maverick Tube Corp.*, 595 F.3d 458, 467 (2d Cir. 2010) (quoting *Greenfield v. Philles Recs., Inc.*, 98 N.Y.2d 562, 569 (2002)).  Those principles inform the interpretation and application of any contract.  However, New York law "disfavors agreements intended to absolve a party from the consequences of its wrongdoing," and, thus, "releases and covenants not to sue are subject to the 'closest of judicial scrutiny' to determine the intent of the parties." *Joao v. Cenuco, Inc.*, 376 F. Supp. 2d 380, 382-83 (S.D.N.Y. 2005) (quoting *Golden Pac. Bancorp v. FDIC*, 273 F.3d 509, 515 (2d Cir. 2001)).  Still, the starting point is the Separation Agreement's text, which provides in relevant part:

> Employer hereby releases and forever discharges Employee . . . from all liabilities, claims, causes of action, . . . and other legal responsibilities, whether known or unknown, . . . which Employer now owns or holds, or has at any time heretofore owned or held, or may at any time own or hold by reason of any matter or thing arising out of or in any way related to the relationship between the parties including, but not limited to, any rights or obligations arising from the Employment Relationship, including any and all claims, known and unknown, for breach of contract, express or implied; breach of the covenant of good faith and fair

dealing; . . . or any other claim arising under tort, contract, or statutory law; <u>but excluding</u> claims arising out of: (i) events, acts, or omissions taking place after the Effective Date of this Agreement; and (ii) claims arising out of Employee's breach of this Agreement, the Invention Agreement, the restrictive covenants contained in the Asset Purchase Agreement (as defined in Section 6(c)), or (iii) claims for indemnification in connection with any Third Party Claim pursuant to the Asset Purchase Agreement, in each case arising after the Effective Date of this Agreement . . . .

(ECF No. 15-12 ("Separation Agreement") § 3.)  Daigle contends that this "broad release" contains "only a narrow carve out" for claims that (i) arise out of events, acts, or omissions taking place after March 3, 2024 *and* meet one of two additional criteria: they are claims (ii) that arise out of the Employee's breach of the Separation or Inventions Agreement or the Asset Purchase Agreement's restrictive covenants; *or* (iii) for indemnification in connection with a Third Party Claim pursuant to the Asset Purchase Agreement.  (*See* Opp. at 14.)  Spotlight contends, instead, that the release "expressly excludes three categories of claims" independently, rather than requiring any released claim to satisfy the post-effective date condition.  (*See* Reply at 10 (emphasis omitted).)  That interpretive question is made more difficult by what appears to be a drafting error in the text:  While the first numeral (and thus, the beginning of the list at issue) is *preceded* by the phrase "claims arising out of," the second and third numerals are *followed* by the phrases "claims arising out of" or "claims for."

The Court suspects that the agreement placed the first numeral four words too late, and that if it preceded the word "claims" as the other numerals do, the text would rather unambiguously support Daigle's reading.  Spotlight's reading, drafting error notwithstanding, relies primarily on the apparently "well-recognized grammatical rule that a semicolon is used to create a greater degree of separateness than would be created by a comma."  (Reply at 10.)  Though the Court is unfamiliar with any rule of "separateness," its application here appears to support Daigle's argument by suggesting that the claim-type requirements in numerals (ii) and

(iii) ought to be grouped together as alternatives, unlike numeral (i)'s effective-date requirement, which is mandatory in any case.  But the apparent drafting error creates a structural ambiguity too difficult to resolve at this stage, and if the interaction of the enumerated criteria were what determined the outcome of the present motion, dismissal would be unwarranted.  *See Bank of N.Y. Tr., N.A. v. Franklin Advisors, Inc.*, 522 F. Supp. 2d 632, 637 (S.D.N.Y. 2007) ("The Court's role on a 12(b)(6) motion to dismiss is not to resolve contract ambiguities.").

However, even if Daigle's interpretation were unambiguously correct, he does not plead any breach of the release agreement.  Daigle contends that, to be excluded from the release, claims must "arise out of . . . events, acts, or omissions taking place after the Effective Date of this Agreement," in addition to arising under the contracts upon which Spotlight bases its claims. (Opp. at 14.)  But Spotlight alleged—and the Court found plausible—that "since the effective date of the Separation Agreement (and the end of the release period), Daigle 'has contacted clients and customers of Spotlight for the purposes of soliciting his competing business, diverting business away from Spotlight, and/or encouraging or advising clients and customers of Spotlight to terminate, reduce, or otherwise modify their relationship with Spotlight.'"  *Spotlight I*, 2024 WL 3966900, at *7.  The Court concluded, "[v]iewing Daigle's post-March 4, 2023, activities in the context of the allegations about pre-March 4, 2023, activities, . . .  Spotlight has pleaded a plausible breach of the non-competition clauses included in the Asset Purchase and Inventions Agreements."  *Id.*  In other words, Spotlight's breach of contract claims "arise out of . . . events, acts, or omissions taking place after the Effective Date of [the Separation] Agreement," which is excluded from the release.  (Separation Agreement § 3.)  Accordingly, Spotlight's assertion of the breach of contract claims did not violate the Separation Agreement's release provision.

The same goes for the good faith and tortious interference claims. The Court dismissed the good faith claims for being duplicative, as Spotlight's argument that "the parties' course of performance and dealing created reasonable expectations about Daigle's non-competition with Spotlight" was insufficient to make out a separate claim. *Id.* at *11. Like the breach of contract claim, Spotlight's assertion was that a good faith claim accrued as a result of Daigle's post-effective date conduct, even if his pre-effective date actions help characterize that conduct. And the Court dismissed the tortious interference claim because Spotlight did not "allege any additional facts—beyond those giving rise to potential contract liability—as supporting its argument that Daigle wrongfully interfered." *Id.* at *11 (emphasis omitted). In particular, Spotlight's allegations were premised upon three theories of wrongful interference: solicitation of customers, misappropriating confidential information, and making false statements or otherwise undermining Spotlight's reputation. *Id.* The gravamen of those allegations, again, is Daigle's post-effective date conduct, even if Spotlight referenced his pre-effective date conduct for context. Or, as the Court put it before, "if Daigle had announced on March 3, 2023, 'I am going to open a business to compete with Spotlight,' and then on March 5, 2023, started a new business, Daigle's prior statement would be *relevant* to determining the nature of the new business, even though it would not be independently *actionable*." *Id.* at *6. It is thus of no moment that Spotlight argued that Daigle breached his fiduciary duty as an employee of Spotlight (an allegation notably missing from the complaint, *see id.* at *11), because such a contention could render post-effective date breaches more plausible. Contrary to Daigle's present argument that the pre-effective date "allegations are pleaded as foundational for Plaintiffs' breach of contract causes of action" (Opp. at 13), the Separation Agreement did not

release allegations, but claims. And the claims Spotlight asserts here were unambiguously excluded from that release even under Daigle's preferred reading.

Nor were those claims released by virtue of the Separation Agreement's provision barring lawsuits "*relating to* any Claims that are released under this Agreement." (*See* Separation Agreement § 5(c) (emphasis added); *see also* Opp. at 8.) "It is black letter contract law that where there is inconsistency between a specific provision of a contract and a general provision of a contract[,] the specific provision controls." *Travelers Indem. Co. of Ill. V. F & S London Pub, Inc.*, 270 F. Supp. 2d 330, 334 (S.D.N.Y. 2003) (cleaned up). Spotlight's claims here fall squarely within the more specific exclusion from the release, notwithstanding any potential application of the much broader "relating to" provision. New York law requires that the Court give effect to the more specific provision. Otherwise, the general "relating to" prohibition would render the release's carefully worded exclusion meaningless, as any claim for breach of contract following the effective date would, by nature, in some way relate to the parties' employment and contractual relationships that preceded the effective date. Under New York law, "a reading of the contract should not render any portion meaningless." *Utica Mut. Ins. Co. v. Fireman's Fund Ins. Co.*, 957 F.3d 337, 346 (2d Cir. 2020) (cleaned up). That comports, too, with the Court's obligation to subject releases and covenants not to sue to the "closest of judicial scrutiny." *Joao*, 376 F. Supp. 2d at 383 (quotation marks omitted).

Finally, the Court's prior observation that "whether the text of the complaint counts as a material breach, notwithstanding the first two defects with Daigle's argument, is a question of fact that cannot be determined on the pleadings alone," *Spotlight I*, 2024 WL 3966900, at *5, does not now preclude dismissal of Daigle's counterclaim. That holding was premised on the assumption that the inclusion of the allegation constituted any breach—an issue the Court did not

reach.  All that the Court held was that materiality, rather than mere breach, presented a factual question.  However, on the present motion, there are no disputed facts relevant to the legal question of whether Spotlight's complaint asserted released claims, assuming Daigle's interpretation of the contract to be true.  Answering that question in the negative, the Court grants Spotlight's motion to dismiss the counterclaim with prejudice.

## IV.    Conclusion

Plaintiffs' motion to dismiss the counterclaim is GRANTED.

The Clerk is directed to close the motion at ECF Nos. 27 and 36.

SO ORDERED.

Dated:  May 5, 2025
        New York, New York

_____
              J. PAUL OETKEN
          United States District Judge